**Eugene Alexander**
52343-424 (A-Unit)
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

U.S.C.A. — 7th Circuit
RECEIVED
JUN 02 2026

May 28, 2026

Clerk of Court
United States Court of Appeals
For the Seventh Circuit
219 Dearborn Street Room 2722
Chicago, IL 60604

RE: Appellant's Second Motion for Enlargement of Time

United States v. Eugene Alexander
Case No.: **25-2616**

Dear Clerk:

Enclosed is the Petitioner's second motion for enlargement of time to file his objection to his Attorney's Motion to Withdraw and Anders v. California, 386 U.S. 738 (1967) Brief.

Mr. Alexander's first motion was granted and he was given until May 11, 2026 to respond. However, for the reasons stated in the May 7th second Motion, he was unable to meet the May 11th deadline. Mr. Alexander has not received a response from the court for the second motion.

He has since completed his objections and included them with this letter, please accept them and file them as timely.

**PLEASE NOTE:** That I am a federally incarcerated individual who was sentenced out of your court and I do not have access to the internet or email.

Return Correspondence to the address above.

Thank you for your prompt attention to this matter.

Respectfully,

Eugene Alexander

Eugene Alexander

# Certificate of Service

I thereby certify that on this 28th day of May, 2026 I placed with staff noted below my first class, postage prepaid envelope addressed to:

**United States Court of Appeals**
**for the Seventh Circuit**
**Everett McKinley Dirksen Federal**
**Building and U.S. Courthouse**
**219 South Dearborn Street**
**Room 2722**
**Chicago, IL, 60604**

containing my **Appellant's Objection to Counselor's Anders Brief** for outbound legal mail with:

[XX] A.M. Legal Mail, or

[ ] Unit Mail Box because a.m. legal mail was not available to me, specifically ______

Note: A.M. Legal mail is the designated legal mail system, but unit mail is used as the alternate mail drop as it is the regular institution mail.

**PLEASE NOTE:** In the interest of efficiency, the Clerk is respectfully requested to **SERVE**, via the ECF system, ALL PARTIES not listed above.

Further, I request the Court clerk **FILE** the included motions and documents under the "Prisoner Mailbox Rule" on the **DATE** noted above, pursuant Houston v. Lack, 487 U.S. 266, 267 (1988). Sworn as true and correct under pains and penalties of perjury. Executed on the above noted date under 28 U.S.C. §1746.

Eugene Alexander

Eugene Alexander

United States Court of Appeals
For the Seventh Circuit

| | | |
|---|---|---|
| United States of America, Plaintiff-Appellee, | ) | No.: 25-2616 |
| | ) | N.D. IL Case No.: 1:17-cr-00319-3 |
| v. | ) | |
| Eugene Alexander, Defendant-Appellant, | ) | |

Defendant Appellant's pro se Response and Objection to Counsel's Anders Brief and Motion to Withdraw

Defendant-Appellant Eugene Alexander, with permission of the court, objects to his appointed appellate counsel's request to withdraw and dismiss the appeal based on four nonfrivolous issues and various matters for preservation matters.

Counsel's Anders brief is inadequate because the reccrd supports nonfrivolous issues such as: Whether Alexander's penalty range was correct; Jury charge failures regarding sentencing facts; presumption, without adversarial testing of sentencing enhancements; viable Fourth Amendment violations; and trial management errors rising to violation of fair process. Additionally the record contains possible speedy trial issues; prosecutorial misconduct, and other issues worth preservation for direct or collateral review.

## I. Standard Under Anders

Under Anders v. California, 386 U.S. 738 (1967), appointed counsel may withdraw only if the appeal is wholly frivolous. If the record presents any issue arguable on its merits, withdrawal

should be denied and the appeal should proceed with adversarial briefing. /Id. at 744.

United States v Bey (748 F.3d 774, 775-76 (7th Cir. 2014)), this court continued the process of clarifying this Circuit's approach to Anders started in United States v Wagner, 103 F.3d 551 (7th Cir. 1996). In a decision by Circuit Judge Posner, the Bey Court defined "frivolous" as arguments or claims that are "so clearly blocked by statute, regulation, binding or unquestioned precedent, or some other authoritative source of law that can be rejected summarily." Bey, at 776. Judge Posner went on to define that a brief is "facially adequate," when "the brief appears to be a competent effort to determine whether the defendant has any grounds for appealing." /Id.

Such determinations by an appellate courts require the court to satisfy itself: (1) that "the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal." /Id.; Citing to McCoy v Court of Appeals, 486 U.S. 429, 442 (1988); and (2) that "counsel correctly concluded that the appeal is frivolous." Bey, at 776; Relying on Penson v Ohio, 488 U.S. 75, 83 (1988); Accord McCoy at 442.

Here, appointed counsel's Anders brief fails both of Bey's requirements as there appears in the record several issues that are not frivolous, worth preserving, or are challengable under questionable precedent.

Being mindful of his status as a lay person in the law, Alexander does not present a full merits brief here. Instead he identifies record-based issues showing his appeal is not wholly frivolous.

## II. Nonfrivolous Issues

In his research and review of the record provided to him, Alexander has identified at least four nonfrivolous issues which appointed counsel improperly analyzed, or overlooked. Because Alexander is performing this review pro se he requests the court perform a full "independent review" of the record, or appoint new counsel to do so. Penson at 80, 82.

In this brief, Alexander's primary focus is to surface facts on the record that support appeal worthy questions; while using very little legal authority, as Mr. Alexander is not legally trained.

### A. The probable sentencing errors drastically increased Alexander's sentence.

1. The career-offender enhancement improperly anchored the Guidelines Range.

Alexander has two state priors, which the district court relied on to state: "The career offender enhancement makes the base offense level go to 34. So it's a total offense level of 34, Category VI, which is guideline imprisonment range of 262 to 327 months." Sentencing Tr. (Aug. 22, 2025), ECF No. 542 at 21:4-7. The designation drastically increased his sentence and was based in part on a 1992 State of Illinois drug possession conviction.

Even with continuing categorical challenges being levied against older state drug convictions as predicates, the record is void of any discussions or objections as to the validity of the 1992 state drug conviction being a predicate; leading the court to state that the enhancement was "appropriate to apply" while noting the guidelines are advisory. /Id. at 45:9-11.

Molina-Martenez v United States, 578 U.S. 189 (2016) teaches that the starting guideline range anchors the sentencing Court's discretion (Id. at 198) and that any errors in calculating that anchor are not harmless. Id. at 204.

With the upheaval roiling sentencing jurisprudence, whether or not the 1992 conviction can be counted as a predicate for a career offender designation, is worthy of review in the adversarial process.

2. Statutory Sentencing Enhancement Unconstitutionally Increased Sentencing Range.

In 2017 the government filed an Information Notice under 21 U.S.C. §851(a) stating it would seek increased punishment based on a 1992 Illinois drug conviction and asserting the statutory penalties would be not less than 10 years and not more than life" under 21 U.S.C. §841(b)(1)(B). Information Notice, ECF No. 143 at 1-2. Between the filing of the §851 Notice and Alexander's sentencing, Congress significantly narrowed whether a prior conviction can be used to apply this enhancement. See P.L. 115-391. Sec. 401, 132 STAT. 5220. Also, during the same time frame, the Supreme Court held that a jury, not a judge, must find sentencing enhancement

facts. See Erlinger v United States, 602 U.S. 821 (2024). Calling into question all settled law that allows the sentencing judge to find facts that affect the applicability of sentencing enhancements. A legal matter not addressed by appointed counsel.

Recently, the Eighth Circuit applied both of these developments to address who decides the enhancement facts determining whether a prior conviction can be counted as a predicate under 21 U.S.C. §851. Thus, existing Seventh Circuit § 851 law is both questionable, and open for review. See United States v Evans, 2026 U.S. App. Lexis 13572, Case No.: 25-1181 (8th Cir. May 12, 2026) (Affirming that, post Erlinger, 21 U.S.C. §851 was unconstitutional as applied to Evans because the enhancement facts were not presented to his jury, Evans, slip at 4-5). The dissent, by Circuit Judge Stras, goes further: declaring 21 U.S.C. §851 unconstitutional because the text of the statute (21 U.S.C. § 851(c)(1)) requires a decision by the judge only, which is in clear violation of the Article II, §2, cl. 1, 3, and the Sixth Amendment to the U.S. Constitution. See Evans, slip at 11.

Because both the statutory text and Supreme Court precedent changed during the pendency of Alexander's case they can, and should be, reviewed for relevancy here, especially in light of the Eighth's decision in Evans. Appointed counsel failed to do so, establishing his review of the case and record was not adequate.

3. Sentencing Errors present in the record are not frivolous and are worthy of adversarial briefing.

The Anders brief was silent on three questionable sentencing matters: Application of the Categorical test to Alexander's 1992 ILCS Drug conviction, the textual narrowing of § 851, and Erlinger's impact on sentencing enhancement fact decisions in general. Each of these issues must be examined and briefed as none can be "rejected summarily." Bey, 748 F.3d at 776.

Given the drastic increase in the starting guideline-range Alexander's priors had on his sentence: the question of whether those priors count (categorically) as enhancement predicates, qualifies as a nonfrivolous challenge to Alexander's sentence, and is worthy of adversarial briefing.

In Erlinger, the Supreme Court continued the shifting of federal sentencing fact-finder responsibility from the judge to the jury. Even though Erlinger was announced over 11 months before Alexander's jury was charged, the jury was not given sentence enhancement facts leaving those determinations, incorrectly, to the sentencing judge.

Whether Alexander's predicates count for sentencing enhancement purposes is no longer blocked by binding precedent, and now is an open legal question. Yet, appointed counsel's Anders brief is silent on these questions. Instead, appellate counsel continued the assumptions made at sentencing, establishing that counsel's appellate review was not facially adequate. See Bey, 748 F.3d at 776.

Because sentencing occurred after both new Supreme Court precedents and statutory changes that were not addressed at sentencing (or in the Anders brief) whether Alexander's penalty range was correct presents a nonfrivolous issue for adversarial briefing.

**B. Counsel mislabeled or overlooked preserved 4th Amendment Issues.**

Counsel argues any suppression challenge is frivolous. The suppression-hearing record excerpts identify concrete, arguable facts supporting appellate review, particularly police identification and the basis for initiating the stop.

1. Police identification issues are record-based and arguable.

The suppression record includes testimony that the police vehicles were "covert," lacked identifying police markings, officers did not display badges or say "Police," and officers were not wearing identifying vests or jackets. Suppression Hearing Tr. (May 15, 2019), ECF No. 241 at 12:21-23; 72:18-23; 74:11-16; 89:7-14; and 91:8-15.

The lower court's resolution of these facts fails to meet standards and exceptions under the Fourth Amendment.

2. The basis for the stop is disputed in the record excerpts and fails to meet requisite probable cause standards.

The record includes testimony indicating the stop was initiated because the agent "suspected" narcotics/proceeds in the vehicle, and testimony that no traffic violation was observed "to my knowledge" prior to the stop. Suppression Hearing Tr. (Apr. 19, 2019), ECF No. 240 at 30:13-19 and 32:7-10. Neither of which rises to the necessary probable cause standard for a search, without a search warrant.

3. Preserved Fourth Amendment issues are worthy of appellate adversarial briefing.

Contrary to the appointed Counsel's assertions, these excerpts establish a nonfrivolous suppression issue requiring adversarial review of the full suppression ruling and hearing record because they are not blocked by existing precedence and raise matters worthy of adversarial briefing.

**C. Nonfrivolous Trial Management/Defense-Theory Limitation Issues.**

Despite appointed counsel's treatment, the record establishes the trial rulings were not waived, and far from harmless. A careful review of the pretrial order (ECF No. 391) compared with trial transcripts (ECF No.'s 436-444) shows there are arguable issues regarding the scope of the Order's enforcement and that the Order impermissibly limited the defense theory.

1. The Final Pretrial Order Improperly Bars Missing-witness Argument.

The Final Pretrial Order states: "The Defendants may cross-examine the government's witnesses regarding thoroughness or quality of their investigation," while also granting (as agreed) the government's request to bar "missing witness" argument. Final Pretrial Order, ECF No. 391 at 7-8.

The order created an impossible scenario in which the defense's ability to present their defense-in-chief was unconstitutionally restrained for no valid reason. A matter that could surmount the high plain error bar and thus worthy of adversarial briefing.

2. The trial record contains active scope control that could affect the argument, and thus the fair presentation of evidence.

Examples include the court's statement: "And if there's an attempt to argue it in that manner, I would sustain it in closing argument." Trial Tr. (June 12, 2024) ECF No. 436 at 1-2. The record also reflects extensive instruction/argument management through the charge conference and closings. See ECF 436, 438, 441, and 443.

These items combined with the Final Pretrial Order's distinct treatment of the investigative-gap cross versus missing-witness argument, presents a nonfrivolous issue whether enforcement at trial exceeded the agreement or improperly constrained a permissible reasonable-doubt argument. Final Pretrial Order, ECF No. 291 at 7-8. A legal question that can be plausibly argued in the crucible of adversarial briefing.

## III. Preserved Issues

Mr. Alexander filed a Rule 33 motion for a new trial that expressly stated he "incorporates by reference all objections made during the trial" and "incorporates all pre-trial and trial motions denied." Rule 33 Motion for New Trial, ECF No 420 at 1.

The district court heard arguments on these objections during the post-trial motion hearing. See Post-Trial Motions Tr. (Mar 25, 2025), ECF No. 541 at 2. Establishing that Alexander did not waive or abandon his various errors and objections raised before, during, and post trial as they were thoroughly litigated in the lower court.

Although these errors were well preserved, they may not rise to the proper appeal standard because: the record was not developed below, the issues were missed by counsel, or the issues are based on unconstitutional acts (decisions) of the eight different prosecutors (or their various teams) shepherding the case from its inception. Whether, on the record established below, these issues broach the nonfrivolous threshold is a matter for trained counsel, but Alexander raises them here for review and preservation purposes.

### 1. Prosecutorial Misconduct

Mr. Alexander expressly preserves prosecutorial-misconduct/due-process claims (including any claim involving false or misleading testimony or failure to correct material misstatements) for further briefing where supported by both current and extra record facts. Including possible presentation via collateral review under 28 U.S.C. §2255.

Such issues include (but not limited to) so called Brady or Napue issues, and the startling fact that Mr. Miller (Alexander's co-defendant at trial) has yet to be sentenced and instead he is still out on bond, over a year after both Mr. Alexander and Mr. Miller were found guilty in the same trial.

2. Jury-instruction Error and Other Trial/Pretrial Errors.

Mr. Alexander believes appellate counsel overlooked various pretrial and trial errors noted in his Rule 33 motion, that were improperly addressed by the district court. Further, he preserves any jury-instruction errors (including omissions, misstatements, denial of requested defense instructions, and improper limiting instructions), together with other trial-level and pretrial errors, for adversarial briefing on direct appeal and/or collateral review under §2255 as appropriate.

3. Speedy Trial Issues

This case and facts raise a two related criminal procedural questions that are worthy of adversarial briefing regarding speedy trial rights over the span of an eight plus year delay.

As the record reflects Mr. Alexander's case spanned close to a decade, yet around the time of his suppression hearings (April and May of 2019) during the conference on either July 14, 2019 (ECF 255) or August 15, 2019 (ECF 266) Mr. Alexander and his attorney informed the Court they were ready for trial at that time. But, his trial did not occur until almost five years later.

Alexander never waived his speedy trial rights, nor does the record reflect a written waiver. He was never consulted about the numerous continuances on the record, and expressed frustration with his counselor for all the delays, wondering why trial was taking so long.

These facts raise a legal question of: Whether, without a written waiver executed by the defendant, is eight years from indictment to trial a per se violation of the Sixth Amendment's right to a speedy trial? If, not a second question is raised: Sans a written speedy trial waiver, at what point is it incumbent on the trial court to inquire, on the record, the defendant's position on his Sixth Amendment right to a speedy trial? Both matters which are worthy of full briefing and argument.

Mr. Alexander expressly preserves any Speedy Trial Act and Sixth Amendment speedy-trial issues for direct or collateral review, including the questions noted above and any ineffective-assistance claims based on failure to assert and litigate speedy-trial rights.

## IV. Culumative Error Analysis

This case raises complex and numerous possible errors, that appellate counsel has dismissed (improperly) as either closed by well settled precedence or as harmless error. This Circuit's case law requires, at least a cursory cumulative error review, yet counsel failed to mention such in his <u>Anders</u> brief, a matter fatal to the summary dismissal of Mr. Alexander's right to a direct appeal.

To meet the cumulative error standard Alexander must show that (1) multiple errors occurred at trial, that (2) in the context of the entire trial, were so severe as to render the criminal proceeding fundamentally unfair. United States v Powell, 652 F.3d 702, 706 (7th Cir. 2011).

Here, in the context of an objection to a counseled Anders brief, Mr. Alexander posits that the Fourth Amendment errors (Supra at 8) coupled with the trial limitations on missing witness/crediblity errors (Supra at 9) and the jury charge errors (Supra, at 4) coupled with the sentencing errors (Supra at 3) plus the Speedy trial errors (Supra at 11) cumulatively rise to a violation of Mr. Alexander's fundamental right to a fair trial.

This analysis is missing from the Anders brief, thus making it inadequate and require under Bey (748 F.3d 774) a full review of the record with fresh eyes.

## V. Relief Requested

Because the record presents at least one nonfrivolous issue (and multiple arguable issues), Mr. Alexander respectfully requests that this Court:

(1) **ALLOW** current counsel's motion to withdraw under Anders and;

(2) **APPOINT SUBSTITUTE APPELLATE COUNSEL** (a different CJA appellate attorney) to represent Mr. Alexander on direct appeal, because counsel has declared the appeal wholly frivolous despite arguable issues and has filed an inadequate brief. See United States v Eskridge, 445 F.3d 930, 931-32 (7th Cir. 2006) to review the record and address, at minimum the nonfrivolous issues noted herein;

(3) **ORDER** merits briefing on the nonfrivolous issues identified above or vacate sentence and conviction and remand for issues raised here.

RESPECTFULLY SUBMITTED this 28th day of May, 2026.

Eugene Alexander
Eugene Alexander
Appellant