**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 13, 2026
Decided October 13, 2026

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

JOSHUA P. KOLAR, *Circuit Judge*

No. 25-2616

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

*v.*

EUGENE ALEXANDER,
*Defendant-Appellant*.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.

No. 1:17-CR-00319(3)

John Robert Blakey,
*Judge*.

**ORDER**

Eugene Alexander was convicted by a jury of possessing over 500 grams of cocaine with the intent to distribute and sentenced to 180 months' imprisonment. He appeals, but his appointed counsel asserts that the appeal is frivolous and moves to withdraw. *See Anders v. California*, 386 U.S. 738, 744 (1967). The *Anders* brief is adequate, so we confine our review to the subjects that counsel discusses and that Alexander raises in the response he filed under Circuit Rule 51(b). *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir. 1997) (explaining that an *Anders* brief is adequate on its face if

"it explains the nature of the case and intelligently discusses the issues that a case of the sort might be expected to involve").

**Background**

We begin with a brief overview of the facts and discuss them in greater detail where relevant to our analysis. As part of a multiple-year investigation, federal agents surveilled two men affiliated with a drug-trafficking organization, Ricardo Castaneda and Santos Godina. In April 2016, agents observed Godina deliver a red cloth bag to Alexander's car. The agents seized the red bag, which contained 3.7 kilograms of cocaine.

Two days later, agents observed Godina place a bag in a minivan driven by Kevin Miller. Agents searched the minivan and discovered five kilograms of a substance containing fentanyl in the bag.

In September 2017, a grand jury returned an eight-count indictment against Castaneda, Godina, Alexander, and Miller.[*] Castaneda and Godina pleaded guilty, but Alexander and Miller proceeded to a joint trial. After a six-day trial, the jury convicted both Alexander and Miller of possessing a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a). The district court sentenced Alexander to 180 months' imprisonment with 4 years' supervised release.

**Discussion**

**a. Motion to Suppress**

Counsel considers whether Alexander could challenge the denial of his motion to suppress the evidence seized from his car. The district court held a two-day evidentiary hearing on the motion and found the following facts. Federal agents began investigating Castaneda's drug-trafficking organization in 2014. Agents believed that Castaneda and his brother managed much of the organization and that Godina worked for them as a drug courier. In April 2016, agents intercepted text messages between Castaneda and a confidential source. The source inquired about purchasing narcotics, and Castaneda responded that he was awaiting a shipment, so he had "[n]othing yet maybe tomorrow."

---

[*] The indictment charged another person, Jennifer Reppin, with possession with intent to distribute cocaine, but that charge was dismissed in 2020.

Later that morning, agents observed Castaneda and Godina park their cars together on a residential street far from where they lived. Kevin Sellers, a member of the task force, testified at the evidentiary hearing that he was parked a few cars in front of Godina. He watched Godina carry a red cloth bag to the driver's side window of a third car—Alexander's—and exchange it for a different bag, which was weighed down with something heavy. Sellers did not see Godina speak with Alexander, and the exchange lasted less than a minute or two.

Two other agents, driving in unmarked cars, followed Alexander as he drove away. An agent pulled up alongside Alexander's car, but Alexander turned left and cut the agent off. The agents activated their emergency lights and sirens and pursued Alexander at high speed through a residential area. Alexander stopped after a third agent pulled in front of him. Agents removed Alexander from the car, laid him on the ground, and handcuffed him. One of the agents saw a red cloth bag on the rear passenger floorboard. He retrieved the bag and discovered a cell phone and two brick-shaped objects wrapped in multiple layers of tape. Agents then released Alexander without arresting him.

The district court denied Alexander's motion to suppress after determining that agents had reasonable suspicion to stop Alexander and probable cause to search the car and containers inside.

Counsel appropriately concludes that it would be frivolous to challenge the district court's ruling on Alexander's motion to suppress. With respect to the investigatory stop, an officer has reasonable suspicion to stop a suspect when he can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). As the district court explained, the agent observed Castaneda and Godina, known drug traffickers, arrive on a residential street within moments of each other. Godina wordlessly and briefly exchanged bags with Alexander, and then all three immediately drove away. *See United States v. Ruiz*, 785 F.3d 1134, 1141–42 (7th Cir. 2015) (reasonable suspicion where suspect briefly met with convicted drug traffickers, appeared to access a hidden compartment in his car, and attempted to evade police). Moreover, Alexander's "headlong flight" once agents attempted to pull him over was "the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

For the same reasons, there is no nonfrivolous challenge to the agents' search and seizure of the red bag. Law enforcement may search a vehicle and containers inside if there is probable cause to believe that either hold evidence of criminal activity. *United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015). Although mere proximity to criminal activity does not generate probable cause, *United States v. Richards*, 719 F.3d 746, 757 (7th Cir. 2013), agents here knew that Castaneda was awaiting a new shipment of narcotics and, based on their training and experience, believed that Alexander's brief interaction with Castaneda's drug courier was consistent with an illegal drug transaction and that the red bag contained narcotics or proceeds from the sale of narcotics. Based on these factual findings, we agree that it would be frivolous to argue that the agents lacked probable cause to believe that Alexander was not only proximate to criminal activity but also a participant in it and that the red bag contained evidence of a crime. *See id.* at 757–58 (actions consistent with confirmed drug-buy supported probable cause to search vehicle).

**b. Sufficiency of the Trial Evidence**

Counsel also considers whether Alexander could challenge the sufficiency of the evidence supporting his conviction. At trial, Castaneda, Godina, and several agents involved in the investigation testified against Alexander and Miller. Castaneda testified that Alexander had texted him seeking to purchase cocaine and that he had given cocaine to Godina to deliver to Alexander. Castaneda observed Godina exchange the cocaine for $80,000, and he alerted Alexander that another car was following them. Godina testified to the same. Both Castaneda and Godina testified at length that they had previously lied to investigators, but when they realized how long their prospective sentences were, they agreed to cooperate and testify against Alexander and Miller.

The agents' testimony at trial substantially conformed to the testimony produced at the evidentiary hearing on the motion to suppress. Although Agent Sellers testified at the suppression hearing, he did not testify at the trial. Instead, a different agent, Frank Teutonico, testified that he observed the exchange between Godina and Alexander. Notably, Teutonico stated that he did not know if Sellers had been present when the exchange occurred. Agent Tyler Kazee testified that after Alexander was pulled over, he saw the red bag on the floor of Alexander's car. He retrieved the bag, saw two brick-like objects wrapped in plastic wrap and a cellphone inside, and delivered the bag to another agent for field testing. The field test and later laboratory testing were positive for cocaine.

Evidence is insufficient when no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *See United States v. Scott*, 150 F.4th 929, 934 (7th Cir. 2025). Overwhelming evidence established Alexander's guilt. Testimony from Casteneda and Godina established that Alexander sought out, paid for, and received over 500 grams of cocaine. A federal agent then testified to finding the bag containing cocaine in Alexander's car soon after Alexander met with Godina. Accordingly, counsel correctly concludes that it would be frivolous to challenge the sufficiency of the trial evidence.

**c. Misjoinder and Severance**

Counsel considers whether Alexander could make a meritorious challenge to his joint trial. After Castaneda and Godina pleaded guilty, Alexander moved to sever his trial from Miller's under Federal Rules of Criminal Procedure 8(b) and 14(a). The district court denied the motion, concluding that Miller's and Alexander's offenses were part of "the same series of acts or transactions" under Rule 8(b) and the joinder did not prejudice Alexander's defense under Rule 14(a). After trial, Alexander's counsel reraised the motion to sever, contending that prejudicial evidence introduced against Miller tainted the joint trial. The court disagreed and denied the motion.

At issue in the post-trial motion was whether the evidence against Miller prejudiced Alexander. Before trial, the district court barred evidence of the defendants' prior acts under Rule 404(b) of the Federal Rules of Evidence. But after Miller's attorney elicited testimony that implicated Miller's previous dealings with Castaneda, the court concluded that Miller had "opened the door" to limited evidence of prior bad acts. Accordingly, the government introduced evidence that the night before Godina placed the fentanyl in Miller's car, Miller repaid Castaneda $200,000 for narcotics that Miller had sold on consignment. The jury also heard evidence of Miller's history of incarceration and long acquaintance with Castaneda and Godina. The jury was instructed to consider this evidence against Miller alone and, generally, to consider the case against each defendant separately.

Counsel correctly concludes that it would be frivolous to challenge the denial of Alexander's motion to sever. Even if the district court erred in joining Alexander and Miller under Rule 8(b), misjoinder requires reversal only if it results in actual prejudice to the defendant, meaning it "had a substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449 (1986). To determine whether misjoinder was harmless, we would look to "the presence of instructions requiring the jury to consider each defendant separately, the likelihood that

evidence relating to the misjoined count would have been admitted in a separate trial and the strength of the evidence of the defendant's guilt." *United States v. Daniels*, 803 F.3d 335, 341 (7th Cir. 2015) (citation modified). Although little to none of the evidence against Miller would have been admissible against Alexander, the jury received the appropriate limiting instruction. *See id.* at 345. More to the point, evidence of Alexander's guilt—namely the first-hand account of an agent who witnessed the transaction and the recovery of drug form Alexander's vehicle—was overwhelming. *See id*.

Similarly, under Rule 14(a), a court may sever properly joined trials if the defendant establishes that there is "a serious risk" that a joint trial would "compromise a specific trial right" or "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). After trial, Alexander urged that the stronger evidence of Miller's guilt and prior dealings with Castaneda and Godina may have tainted the jury against him. But where, as here, limiting instructions cure any marginal prejudice, a challenge under Rule 14 is futile. *See United States v. Coley*, 137 F.4th 874, 884 (7th Cir. 2025).

**d. Post-Trial Motions**

After trial, Alexander moved for a judgment of acquittal and, alternatively, for a new trial under Federal Rules of Criminal Procedure 29 and 33. Alexander emphasized that Sellers and Teutonico testified to being parked in the same place while Godina delivered the red bag to Alexander, but Teutonico did not remember Sellers being present. Thus, Alexander reasoned, one of the two had to be lying. At sentencing, the district court denied the motions after determining that overwhelming evidence supported the jury's verdict, notwithstanding any inconsistencies in the agents' testimony.

Counsel rightly concludes that it would be pointless to challenge the court's denial of Alexander's post-trial motions. In considering the denial of a motion for a judgment of acquittal, we ask "whether evidence exists from which any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010). And when reviewing the denial of a motion for new trial, we consider whether the evidence against the verdict is so strong that it would be a miscarriage of justice to let the verdict stand. *See United States v. Friedman*, 971 F.3d 700, 713 (7th Cir. 2020). A challenge to the denial of either motion would be frivolous because, for the reasons already mentioned, ample evidence supported Alexander's guilt.

In his response under Circuit Rule 51(b), Alexander proposes that the discrepancies between Sellers's and Teutonico's testimonies call the verdict into question. But we would find the testimony to be incredible as a matter of law only if it were physically impossible for the witness to have observed what he described or impossible under the laws of nature for those events to have occurred. *United States v. Farmer*, 717 F.3d 559, 563 (7th Cir. 2013). It would be frivolous to argue that it was physically impossible for both Sellers and Teutonico to observe the transaction from separate cars.

**e. Sixth Amendment Right to a Speedy Trial**

In his response Alexander raises whether the seven-year delay between his indictment and trial violated his right to a speedy trial under the Sixth Amendment, but such a challenge would be frivolous. Delay of over a year triggers the speedy-trial analysis but does not, on its own, establish a violation of the Sixth Amendment. *United States v. Bell*, 925 F.3d 362, 376 (7th Cir. 2019). We must consider (1) the length of the delay, (2) whether the defendant or government is more to blame for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) any prejudice suffered because of the delay. *Id*. Here, Alexander consented to nearly every continuance and did not assert his right to a speedy trial. Moreover, we discern no prejudice stemming from the delay. Alexander was not incarcerated in the years leading up to his trial. *Cf. id*. (pretrial incarceration weighs in favor of the defendant). And although the passage of time may sometimes prejudice the defendant, any lapses in the witnesses' memories worked to Alexander's advantage. *See id*. 376–77.

To the extent that Alexander contends that his counsel was ineffective for failing to invoke the right to a speedy trial, that argument is better saved for collateral review, where the record can be more fully developed. *See United States v. Cates*, 950 F.3d 453, 456–57 (7th Cir. 2020).

**f. Sentencing**

At sentencing, the district court applied a career-offender sentencing enhancement under § 4B1.1, which increased Alexander's guidelines range from 78 to 97 months to 262 to 327 months. In his response, Alexander proposes challenging the application of the career-offender sentencing enhancement, but a challenge would be frivolous.

We would uphold a career-offender enhancement where, as here, the defendant was at least 18 at the time of the offense; the present offense is a felony and either a crime of violence or a controlled substance offense; and the defendant has two prior felony convictions for either a crime of violence or controlled substance offense. *See* U.S.S.G. § 4B1.1. Alexander was convicted of the requisite predicate offenses: attempted murder in 1994 and possessing a controlled substance with intent to deliver in 1995. *See People v. Alexander*, No. 93CR0919002 (Cook Cnty. Cir. Ct. Mar. 17, 1994); *People v. Alexander*, No. 93CR0139401 (Cook Cnty. Cir. Ct. June 6, 1995). Inchoate offenses, like attempted murder, are crimes of violence, *see* U.S.S.G. § 4B1.2(d), and his conviction for possession is a controlled substance offense under the Guidelines, *see United States v. Ruth*, 966 F.3d 642, 654 (7th Cir. 2020). Although Alexander asserts that his conviction is not a categorical match to the federal Controlled Substances Act, *see id.* at 650, any challenge would be frivolous because the conviction is a predicate offense under the Guidelines' definition of controlled substance offenses, *see id.* at 654.

Alexander also questions whether it was permissible for the district court, rather than the jury, to find the fact of his previous convictions under *Erlinger v. United States*, 602 U.S. 821 (2024). But the court was permitted to make those findings because they did not increase Alexander's mandatory maximum or minimum sentence. *See United States v. Miedzianowski*, 60 F.4th 1051, 1057 (7th Cir. 2023).

* * *

Lastly, we address a clerical error in the judgment. Alexander was charged with and convicted of possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1), but the judgment incorrectly describes the offense as "Conspiracy to Distribute Controlled Substance." We may correct a clerical error under Rule 36 of the Federal Rules of Criminal Procedure. *United States v. Anobah*, 734 F.3d 733, 739 (7th Cir. 2013). We thus order the clerk of the district court to amend the written judgment and commitment orders to reflect that the offense of conviction was for possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(ii).

Counsel's motion to withdraw is GRANTED and the appeal is DISMISSED.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## FINAL JUDGMENT

October 13, 2026

Before
FRANK H. EASTERBROOK, *Circuit Judge*
THOMAS L. KIRSCH II, *Circuit Judge*
JOSHUA P. KOLAR, *Circuit Judge*

| | |
|---|---|
| No. 25-2616 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>EUGENE ALEXANDER,<br>Defendant - Appellant |
| **Originating Case Information:** | |
| District Court No: 1:17-cr-00319-3<br>Northern District of Illinois, Eastern Division<br>District Judge John Robert Blakey | |

We address a clerical error in the judgment. Alexander was charged with and convicted of possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1), but the judgment incorrectly describes the offense as "Conspiracy to Distribute Controlled Substance." We may correct a clerical error under Rule 36 of the Federal Rules of Criminal Procedure. *United States v. Anobah*, 734 F.3d 733, 739 (7th Cir. 2013). We thus order the clerk of the district court to amend the written judgment and commitment orders to reflect that the offense of conviction was for possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(ii). Counsel's motion to withdraw is **GRANTED** and the appeal is **DISMISSED**. The above is in accordance with the decision of this court entered on this date.

Clerk of Court

form name: **c7_FinalJudgment** (form ID: **132**)